In the

# United States Court of Appeals
## For the Seventh Circuit

No. 10-3848

SYNTHIA G. ROSS, JAMES KAPSA, and SHARON WELLS,
on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees,*

*v.*

RBS CITIZENS, N.A. d/b/a CHARTER ONE and
CITIZENS FINANCIAL GROUP, INC.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CV 5695—**Joan Humphrey Lefkow**, *Judge.*

ARGUED APRIL 12, 2011—DECIDED JANUARY 27, 2012

Before KANNE and EVANS[*], *Circuit Judges* and
CLEVERT, *District Judge.*[**]

[*] Circuit Judge Evans died on August 10, 2011, and did not
participate in the decision of this case, which is being
resolved by a quorum of the panel under 28 U.S.C. § 46(d).

[**] The Honorable Charles N. Clevert, Jr., United States District
Court for the Eastern District of Wisconsin, sitting by designa-
tion.

KANNE, *Circuit Judge.* Synthia Ross, James Kapsa, and Sharon Wells[1] filed this class action against RBS Citizens, N.A. doing business as Charter One (a related entity, Citizens Financial Group, Inc. is also named but for simplicity, it need not be mentioned) for allegedly violating the Fair Labor Standards Act, 29 U.S.C. § 216(b), and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1 *et seq.* The central claim is that the plaintiffs and other similarly situated employees and former employees of Charter One were denied overtime pay to which they were entitled*.* For the IMWL claim, the district court granted the plaintiffs' motion to certify two classes. Charter One challenges the district court's class certification order solely on the ground that it did not comply with Rule 23(c)(1)(B) of the Federal Rules of Civil Procedure. Following oral argument, the Supreme Court clarified the Rule 23(a) commonality element in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Shortly thereafter, we requested the parties file statements of position addressing whether the class certification order satisfied *Dukes*. We now affirm.

---

[1] Plaintiff Wells worked for Charter One in Ohio. She is not a party to this appeal because she has no claim against Charter One under the Illinois Minimum Wage Law.

**I. BACKGROUND**

Charter One operates more than 100 bank branches in Illinois. Most are traditional stand-alone branches, and the rest are small "in-store" branches usually located inside places like supermarkets. The branches are organized into seven regions, each with a regional manager who reports to the state director. Employees at the Illinois branches are organized, for overtime purposes, into two categories: "exempt" and "non-exempt." The non-exempt category is comprised of employees who do more routine tasks—like tellers and personal bankers—all of whom are eligible to receive overtime pay when they work more than forty hours per week. The exempt category is comprised of branch managers and assistant branch managers ("ABMs"). These employees are ineligible to receive overtime pay.

Synthia Ross began working as a teller at a Chicago branch in 2000 and was later promoted to teller manager before her employment terminated in 2007. James Kapsa was hired as an ABM at a branch in St. Charles, Illinois, in 2007 and became acting branch manager for a short period of time before switching roles to become a personal banker. Kapsa spent time at several other Illinois branches before his employment terminated in 2009. Ross alleges that Charter One has an unofficial policy of denying overtime pay to its non-exempt employees by: (1) instructing them not to record hours worked per week over forty; (2) erasing or modifying recorded overtime hours; (3) giving them "comp time" instead of paying overtime; and (4) requiring them to

perform work during unpaid breaks. Kapsa alleges that Charter One illegally denies ABMs overtime pay by misclassifying their positions as exempt even though ABMs spend the majority of their time performing non-exempt work. Charter One denies that any such unofficial policy exists, and further contends that ABMs are correctly classified as exempt employees.

Plaintiffs sought to certify two classes for the IMWL claim—the "Hourly" class and the "ABM" class. The proposed Hourly class definition is:

> All current and former non-exempt employees of [Charter One] who have worked at their Charter One retail branch locations in Illinois at any time during the last three years, who were subject to [Charter One's] unlawful compensation policies of failing to pay overtime compensation for all hours worked in excess of forty per work week.

The proposed ABM class definition is:

> All current and former Assistant Branch Manager employees of [Charter One] who have worked at their Charter One retail branch locations in Illinois at any time during the last three years, who were subject to [Charter One's] unlawful compensation policies of failing to pay overtime compensation for all hours worked in excess of forty per work week.

In a carefully reasoned seventeen-page opinion and order, Judge Lefkow found that the plaintiffs satisfied the four class-action prerequisites of Federal Rule of

Civil Procedure 23(a), namely: numerosity, commonality, typicality, and adequacy of representation. She also found that the plaintiffs satisfied Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The district court then certified both classes as opt-out classes under Rule 23(b)(3) based on the proposed class definitions.

Charter One filed this timely interlocutory appeal pursuant to Rule 23(f). On September 14, 2011, following oral argument, we asked the parties to file statements of position describing whether the certified classes satisfy the *Dukes* conception of commonality.

## II. ANALYSIS

Charter One appealed the district court's certification order, and this interlocutory appeal is now before us on (1) the very narrow issue of whether the district court judge's certification order complied with Rule 23(c)(1)(B)[2]

---

[2] In the guise of suggesting that a remand would be futile, Charter One devotes a fair portion of its briefs arguing that both certified classes are fundamentally unsuitable for class treatment. But, our November 30, 2010, order granting defendant's motion for leave to appeal pursuant to Rule 23(f) limited our review to "the sole issue of whether the district court complied with Rule 23(c)(1)(B)." Thus,

(continued...)

and (2) whether the two certified classes satisfy the commonality prerequisite post-*Dukes*. We review class certification decisions for an abuse of discretion. *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011). But, "[i]f a district court's findings rest on an erroneous view of the law, they may be set aside on that basis." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990) (quotation marks omitted); *Ervin*, 632 F.3d at 976.

### A.   Defining the Class and the Class Claims, Issues, or Defenses

Rule 23(c)(1)(B) was added to the Federal Rules in 2003. The Rule provides, "An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Although we touched briefly on the importance of properly defining the class, claims, issues, and defenses in *Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011),[3] the exact contours of

---

[2]  (...continued)
we decline to review Charter One's suitability argument to the extent it does not directly respond to our September 14, 2011, order requesting position statements discussing whether *Dukes* alters the district court's commonality analysis.

[3]  In *Spano*, referring to classes certified under Rule 23(b)(1), we wrote, "[T]he most important part of that order is the place where it defines the class. This is a vital step. Both the scope of the litigation and the ultimate *res judicata* effect of the
(continued...)

Rule 23(c)(1)(B) is an issue of first impression for us. *See also Simer v. Rios*, 661 F.2d 655, 670 (7th Cir. 1981) (pre-subsection (c)(1)(B) case finding that proper class identification "alerts the court and parties to the burdens that such a process might entail" and "insures that those actually harmed by defendants' wrongful conduct will be the recipients of the relief eventually provided").

Only the Third Circuit has fully addressed the meaning of Rule 23(c)(1)(B). *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179 (3d Cir. 2006).[4] The *Wachtel* court started its analysis, as it must, with the rule's text. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). The Third Circuit reasoned:

> To "define" a thing or concept is "to state precisely or determinately [its boundaries]; to specify" or "[t]o frame or give a precise description" of a thing. *Oxford English Dictionary* (2d ed. 1989). According to the Rule, those things to be defined in a certification order include the "class *and* the class claims, issues, or defenses. . . ." Fed. R. Civ. P. 23(c)(1)(B)

---

[3] (...continued)
final judgment depend on the class definition." 633 F.3d at 583-84 (citations omitted). We ultimately reversed the district court's certification order, and thus, had no need to fully interpret Rule 23(c)(1)(B).

[4] The First Circuit, in dictum, adopted the reasoning in *Wachtel*. *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 38-41 (1st Cir. 2009).

(emphasis added). The above elements occur in a conjunctive, undifferentiated list, indicating that the requirement to "define" the "class claims, issues or defenses" is identical to the requirement to define the "class" itself within a given certification order. *Id.* Furthermore, the use of the definite article "the" before "class claims, issues, or defenses" connotes comprehensiveness and specificity, rather than illustrative or partial treatment, in defining those aspects of class action certification.

*Wachtel*, 453 F.3d at 185.

We find this interpretation persuasive, especially when read in conjunction with the history and purpose of the 2003 amendments to Rule 23. Although the Advisory Committee Notes accompanying these amendments do not specifically address subsection (c)(1)(B), the published report of the Standing Committee on Rules of Practice and Procedure introduced the proposed Rule 23 amendments by noting that the Rule 23(c)(1)(B) requirement "facilitates application of the interlocutory-appeal provision of Rule 23(f) by requiring that a court . . . define the class it is certifying and identify the class claims, issues, and defenses." Comm. on Rules of Practice and Procedure, Judicial Conference, *Report of the Judicial Conference*, 8, 11 (Sept. 2002). Without a precise definition of the class, claims, issues, and defenses, it would be exceedingly difficult for this court to review the propriety of a class certification order.

The Third Circuit's plain reading of the Rule is also supported by the Federal Rule's apparent move towards the creation of voluntary trial plans. In observing courts' increased use of class-action trial plans, the Advisory Committee noted that the "critical need is to determine how the case will be tried." Fed. R. Civ. P. Rule 23 advisory committee's note. The justification for a clear trial plan applies with equal force to subsection (c)(1)(B). In other words, there is a critical need to define the class, claims, issues, and defenses so the parties can adequately prepare for trial. *See also Simer*, 661 F.2d at 670.

Given the text, history, and purpose of Rule 23 and the importance we ascribed to precise class definitions in *Spano* and *Simer*, we agree with the Third Circuit's interpretation of subsection (c)(1)(B). *Wachtel*, 453 F.3d at 187-88. Therefore, we hold that the appropriate substantive inquiry for Rule 23(c)(1)(B) is "whether the precise parameters defining the class and a complete list of the claims, issues, or defenses to be treated on a class basis are readily discernible from the text either of the certification order itself or of an incorporated memorandum opinion." *Id.* at 185. This means that an order (or incorporated opinion) must include two elements: "(1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis." *Id.* at 187-88. The question confronting us now is whether the district judge's certification order meets this standard. Although there might be

some room for the district court to have drafted a clearer certification order, we find the trial court did not abuse its discretion in defining the class and the class claims, issues, or defenses for both the Hourly and ABM classes.

*1. Defining the Class*

Charter One first challenges whether the class was properly defined. The district court's certification order created an Hourly class and an ABM class both of which included employees and former employees "who were subject to defendants' *unlawful* compensation policies" (emphasis added). Charter One contends that the class certification order creates a conditional class that hinges on whether its overtime policy was unlawful. To the defendant, the term "unlawful" suggests that the court must first determine liability before class membership can be determined. Without a precise class definition, Charter One warns that it is impossible to send notice to class members as required by Rule 23(c)(2)(B).

Although there is perhaps some minor ambiguity in the certification order, the district court's memorandum opinion accompanying the order eliminates any potential for confusion. In fact, Judge Lefkow concluded in her Rule 23(b)(3) predominance analysis that an unlawful policy could be inferred based on "the number of people making the same allegations across branches, managers, positions, and time frames." *Ross v. RBS Citizens, N.A.*, No. 09 CV 5695, 2010 WL 3980113, at *6 (N.D. Ill. Oct. 8, 2010). For purposes of class certification,

Judge Lefkow found that *all* current and former em-
ployees who have worked at an Illinois Charter One
location within the last three years were subject to an
unlawful overtime policy, and as such, qualify as class
members. Thus, the certification order, when read in
conjunction with the memorandum opinion, leaves no
doubt about which employees and former employees
constitute the class.

Furthermore, the potential harms of a poorly-defined
class are not implicated by the district court's alleged
lack of precision. For example, our review of the certifica-
tion order and memorandum opinion was in no way
diluted by an imprecise class definition. As we have
already made clear, we read Judge Lefkow's well-
reasoned seventeen-page opinion and order to define
both classes as consisting of all Hourly and ABM em-
ployees and former employees who have worked at
Charter One during the previous three years. Similarly,
the *Simer* justifications for a clear class definition do
not come into play. Here, employees and former
employees within the past three years are on notice of
how their rights might be affected by litigating this
dispute as a class because the plaintiffs' proposed
notice mirrors the district court's certification order.[5]

---

[5] The plaintiffs' Motion for Approval of Class Notices and the
attached proposed notice for the Hourly class is directed to
"current and former Charter One Illinois bankers, personal
bankers, tellers, teller managers, head tellers and senior tellers
working at Charter One's Illinois retail branch locations
(continued...)

Ultimately, we find that the district court defined the class in a manner that is "readily discernible from the text either of the certification order itself or of an incorporated memorandum opinion." *Wachtel*, 453 F.3d at 185.

### 2. *Defining the Class Claims, Issues, or Defenses*

Charter One also asserts that the district court abused its discretion by identifying only two claims for trial instead of identifying a comprehensive list of claims, issues, or defenses. *See Wachtel*, 453 F.3d at 188 (affirming the district court's definition of the class, but remanding because the district court failed to identify a comprehensive list of claims, issues, or defenses). Charter One concedes that the district court properly identified two claims, but it identifies seven additional questions that the district court purportedly should have discussed as

---

[5] (...continued)
who were employed in this position from October 23, 2006 to the present." Further, the description of the Hourly claim specifically mentions four mechanisms Charter One allegedly employed in failing to pay overtime. Likewise, the proposed notice for the ABM class is directed to "all current and former Charter One Illinois assistant branch managers who were employed in this position from October 23, 2006 to the present." The description of the ABM lawsuit explains the claim as one of incorrect classification of ABMs as exempt personnel. Both class-notice documents leave little room for confusion among potential class members.

claims or issues.[6] Without a comprehensive list of issues, Charter One warns that the parties cannot adequately prepare for trial and potential class members cannot make informed decisions about whether to opt out of the class.

Like the district court's definition of the class, we find no abuse of discretion in how Judge Lefkow defined the class issues, claims, or defenses. To begin, Charter One's heavy reliance on *Wachtel* is misplaced. There, the Third Circuit chided the district court for using the Latin phrase *inter alia* ("among other things") because the very use of that phrase suggests that the list of common issues is intentionally incomplete. 453 F.3d at 189. The district court in this case did not make the same mistake. The *Wachtel* court also found the district court's treatment of the claims, issues, and defenses to be "unclear, intermittent, and incomplete," with nothing in the certification order that "evidences an intent to explicitly define which claims, issues, or defenses are to be treated on a class basis." *Id.*

Here, the district court's opinion does not suffer from the same deficiencies as the Third Circuit found in *Wachtel*. Rather, the plaintiffs' claims that will be tried as a class are "readily discernible" from the district court's order and accompanying opinion. For example,

---

[6] For example, Charter One contends that it is unclear whether its actual or constructive knowledge of each alleged IMWL violation will be tried on a common basis or through some type of individual proceeding.

Judge Lefkow clearly identified the Hourly class's claim that they were subject to a company policy that intentionally failed to pay lawfully earned overtime. *Ross*, 2010 WL 3980113, at *6 ("[T]he common issue of whether a company-wide policy existed to deny overtime will predominate over the variations in methods used to accomplish the alleged policy."). The district court went so far as to identify four possible ways in which the plaintiffs claimed they had been forced to work off-the-clock, although Judge Lefkow appropriately left room for the introduction of other types of evidence illustrating the nature of Charter One's unlawful policy. *Id.* Explicit identification of this claim and four possible types of evidence is exactly the type of clarity and completeness required by Rule 23(c)(1)(B). Likewise, the district court clearly identified the ABM class's claim that their primary duty was to perform non-exempt work under an unlawful company policy. *Id.* at *7 ("[T]he relevant inquiry is what an ABM's primary duty is."). The district court also stated that the application of any IMWL exemptions (e.g., executive or administrative exemptions) should be tried as a class rather than through individualized inquiries. *Id.*

Ultimately, the claims identified by the district court are the *only* claims that require resolution at trial and the district court appropriately found that these claims will be litigated as a class. The seven questions raised by Charter One are merely issues of trial strategy or proof, rather than overall claims or issues necessitating resolution. If we read Rule 23(c)(1)(B) to require a

district court to list any possible method of proof, as Charter One appears to suggest, the length of such an order would border on the absurd. Here, the district court rightfully identified the two critical claims and the potential for an exemption defense, and found that it is all best litigated as a class.

*B. Commonality*

Following oral argument in this case, the Supreme Court clarified the Rule 23(a)(2) commonality prerequisite in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2541. Shortly thereafter, we issued an order asking the parties to file brief statements of position describing whether the certified classes satisfy *Dukes*. We find that *Dukes* does not change the district court's commonality result, and as such find that the district court properly certified both classes.

The commonality prerequisite requires the plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has interpreted commonality as requiring the plaintiff to show that class members "have suffered the same injury," *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982); *Dukes*, 131 S. Ct. at 2551, but notably "[t]his does not mean merely that they have all suffered a violation of the same provision of law," *Dukes*, 131 S. Ct. at 2551. "What matters to class certification . . . is not the raising of common 'questions'—even in droves— but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution

of litigation." *Id.* (emphasis in original). To satisfy the commonality element, it is enough for plaintiffs to present just one common claim. *Id.* at 2556.

In *Dukes*, a nationwide class of 1.5 million current and former female employees from 3,400 stores sued Wal-Mart, alleging that the company engaged in a pattern or practice of gender discrimination in violation of Title VII of the Civil Rights Act of 1964. *Id.* at 2547. A Title VII disparate-treatment suit of course requires that plaintiffs show proof of discriminatory motive or intent. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335-36 (1977); *Dukes*, 131 S. Ct. at 2552 ("[I]n resolving an individual's Title VII claim, the crux of the inquiry is the reason for a particular employment decision."). In *Dukes*, the Court reversed the district court's certification order on the grounds that the plaintiff could not offer "significant proof that Wal-Mart operated under a general policy of discrimination." *Dukes*, 131 S. Ct. at 2553, 2556 (a policy allowing discretion "is just the opposite of a uniform employment practice that would provide the commonality needed for a class action") (quotation marks omitted). In reversing class certification, the Court found that there was no unifying motive theory holding together "literally millions of employment decisions." *Id.* at 2552.

In the present case, Charter One attempts to find significant similarities with *Dukes*. Charter One's principal contention is that both classes' claims require the same significant and time-consuming individualized liability inquiries that the Supreme Court found problematic in *Dukes*. For the Hourly class, Charter One argues

that there are at least four ways in which plaintiffs were denied overtime, and sifting through such individualized evidence should preclude a commonality finding. Similarly for the ABM class, Charter One contends that a factfinder would be required to individually determine whether each ABM performed non-exempt duties.[7] The defendant makes one additional argument regarding the ABM class. Namely, Charter One branch managers are vested with the same kind of discretion as the store managers in *Dukes* and such discretion limits the ability of the court to find common claims.

Despite Charter One's best efforts to fit the present case into the *Dukes* mold, there are significant distinctions. Perhaps the most important distinction is the size of the class and the type of proof the *Dukes* plaintiffs were required to offer. *See, e.g., Youngblood v. Family*

---

[7] Misreading *Dukes*, Charter One also contends that it has a statutory right to present its affirmative exemption defenses on an individualized basis, and thus, there is no commonality. However, the *Dukes* passage the defendant cites in support of its argument discusses how the Ninth Circuit improperly certified a Rule 23(b)(2) class that sought equitable relief. In so ruling, the Court struck down the Ninth Circuit's attempt to circumvent 42 U.S.C. § 2000e-5(g)(2)(A) by holding that Wal-Mart had a statutory right to avoid *equitable* damages by showing that "it took an adverse employment action for any reason other than discrimination." *Dukes*, 131 S. Ct. at 2560-61 (emphasis added). Charter One has no such statutory right because both classes are seeking only monetary relief through a Rule 23(b)(3) class.

*Dollar Stores, Inc.*, No. 09 Civ. 3176 (RMB), 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011) (distinguishing *Dukes* on the ground that New York's version of the FLSA does not require "an examination of the subjective intent behind millions of individual employment decisions"); *Bouaphakeo v. Tyson Foods, Inc.*, No. 5:07-cv-04009-JAJ, 2011 WL 3793962, at *2 (N.D. Iowa Aug. 25, 2011) (reasoning that because "*Dukes* was a Title VII case, the focus of the inquiry in resolving each individual's claim was 'the reason for [the] particular employment decision'"). In *Dukes*, 1.5 million nationwide claimants were required to prove that thousands of store managers had the same discriminatory intent in preferring men over women for promotions and pay raises. Here, there are 1,129 Hourly class members and substantially fewer ABMs, all of whom are based only in Illinois. The plaintiffs' IMWL claim requires no proof of individual discriminatory intent. Instead, the plaintiffs' theory, supported by ninety-six Hourly class declarations and twenty-four ABM class declarations, is that Charter One enforced an unofficial policy in Illinois denying certain employees overtime pay that was lawfully due. All ninety-six Hourly declarations specifically allege that the declarant had been denied lawfully due overtime compensation. Eighty-nine declarations further allege that Charter One had a policy instructing the declarant not to record earned overtime. Meanwhile, the majority of the ABM declarants assert that they primarily performed non-exempt work. Although there might be slight variations in how Charter One enforced its overtime policy, both classes maintain a

common claim that Charter One broadly enforced an unlawful policy denying employees earned-overtime compensation. This unofficial policy is the common answer that potentially drives the resolution of this litigation. *Dukes*, 131 S. Ct. at 2551.

Appellant's final criticism of the ABM class equating Wal-Mart managers' promotion discretion with the limited discretion vested in Charter One branch managers is misplaced. Specifically, the plaintiffs in *Dukes* alleged that the discretion given to Wal-Mart managers is what caused female employees to experience disparate treatment. *Id.* at 2548. The Supreme Court was clearly unable to infer a common claim from an allegation that on its face suggested store managers exercised significant discretion. *Id.* at 2554. Here, the ABM class contends, and is supported in part by twenty-four ABM declarations, that a company-wide policy in Illinois requires ABMs to perform non-exempt work in violation of the IMWL. Although there again might be slight variations in the exact duties that each ABM performs from branch to branch, the ABMs maintain a common claim that unofficial company policy compelled them to perform duties for which they should have been entitled to collect overtime. Contrary to Charter One's assertion, an individualized assessment of each ABM's job duties is not relevant to a claim that an unlawful company-wide policy exists to deny ABMs overtime pay.

Ultimately, the glue holding together the Hourly and ABM classes is based on the common question of whether an unlawful overtime policy prevented em-

ployees from collecting lawfully earned overtime compensation. For that reason, we find that the district court's certification order satisfies the commonality prerequisite and the district court properly granted class certification.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order certifying an Hourly and ABM class for the plaintiffs' IMWL claims.