UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-1252

LAMARCUS EALY; DONALD JACKSON; GARY SIMMONS; NABIE BANGURA;
KEODRIAN BIDDLE; ANDRE BLAKE; JAMES BONDS; JERMAINE FRASER;
CHARLEY HARRIS; ELISE HURTZIG; JOHNNY JONES; SHERRI SIVELS;
RONALD WASHINGTON; CHAMIA EVON WHITFIELD; DIONTA CURTIS;
NIAARDAY TAGOE; DONALD WASHINGTON; DARRELL JOHNSON; BROCK
ASHBAUGH; ANTWINE STANLEY,

Plaintiffs - Appellees,

v.

PINKERTON GOVERNMENT SERVICES, INC.,

Defendant – Appellant.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.    Peter J. Messitte, Senior District
Judge.  (8:10-cv-00775-PJM)

Argued:  December 4, 2012            Decided:  March 14, 2013

Before MOTZ, FLOYD, and THACKER, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Robert G. Ames, VENABLE, LLP, Washington, D.C., for
Appellant.   Michael Timothy Anderson, MURPHY ANDERSON, PLLC,
Washington, D.C., for Appellees.  **ON BRIEF:** John F. Cooney,
VENABLE, LLP, Washington, D.C.; Thomas H. Strong, Mark D.
Maneche, VENABLE, LLP, Baltimore, Maryland, for Appellant.  Mark
Hanna, Renee M. Gerni, MURPHY ANDERSON, PLLC, Washington, D.C.;

Arthur P. Rogers, Keira M. McNett, D.C. EMPLOYMENT JUSTICE CENTER, Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This dispute arises in the context of an action brought by private service employees for allegedly unpaid wages while working for Pinkerton Government Services, Inc. ("Pinkerton"), a government contractor at Andrews Air Force Base.[1] The district court granted the employees' motion for class certification and Pinkerton filed this appeal. Pinkerton seeks review of the district court's grant of class certification as well as review of an earlier denial of its motion for summary judgment based on the federal enclave doctrine.

We conclude that Supreme Court precedent demands a more rigorous analysis as to whether class certification requirements listed in Rule 23 of the Federal Rules of Civil Procedure have been satisfied in this case. We also conclude that Pinkerton has failed to demonstrate that the federal enclave doctrine is inextricably intertwined with, or necessary to ensure meaningful review of, the class certification requirements found in Rule 23. Accordingly, we vacate and remand for reconsideration the employees' motion for class

---

[1] Andrews Air Force Base was recently consolidated with an adjacent military facility and renamed Joint Base Andrews. For the sake of simplicity, we will refer to the facility as Andrews Air Force Base.

certification and decline to exercise pendent appellate jurisdiction over Pinkerton's motion for summary judgment based on the federal enclave doctrine.

## I.

### A.

Pinkerton is a private contractor that provides a variety of security services. From December 2007 through September 2011, Pinkerton performed civilian security services as a subcontractor to a contract between Southeast Protective Service and Andrews Air Force Base. Andrews Air Force Base is a federal military enclave acquired by the United States from Maryland in 1942. Appellees LaMarcus Ealy, Donald Jackson, Gary Simmons, et al. ("Appellees") are current and former security officers employed by Pinkerton at Andrews Air Force Base.

Two of Pinkerton's practices at Andrews Air Force Base are at the heart of this case: Pinkerton's policies regarding compensation for time spent (1) disarming; and (2) during meal breaks.

### 1.

### Disarming

The shifts worked by Pinkerton's employees at Andrews Air Force Base consisted of alternating 30 minute periods: 30 minutes at their guard post, followed by 30 minutes on standby

4

at an on-site guard shack.  At the beginning of each shift, Pinkerton required its security personnel employed at Andrews Air Force Base to report to the base armory to obtain weapons and equipment to be used during their respective shifts.  At the conclusion of each shift, Pinkerton required its employees to report back to the base armory to deposit the weapons and equipment, that is, to disarm.  This process of disarming took Pinkerton employees approximately 15 minutes to complete. According to Appellees, prior to November 2009, Pinkerton employees were not compensated for time spent disarming.[2]

## 2.

### Meal Breaks

Pursuant to its subcontract, Pinkerton was required to provide all of its security personnel at Andrews Air Force Base with off-duty meal breaks.  Under Pinkerton's contract, Pinkerton was to "provide shift relief for employees during meals and scheduled breaks as required by state and local law," S.A. 54, and Pinkerton's security personnel were to "be relieved

---

[2] In November 2009, Pinkerton informed Appellees that their start time on their timesheets should be the time they begin the arming procedure, and their end time should be the time they complete the disarming procedure.  Appellees originally alleged in Count I of their Complaint that they were not properly compensated for time spent arming and disarming.  At a hearing before the district court, however, the Appellees abandoned their claim with respect to arming.

to take meals off/away from posts." Id.[3]  Prior to November 2009, Pinkerton's employees received 30-minute uncompensated meal breaks.  After November 2009, the meal break period increased and Pinkerton's employees received 45-minute uncompensated meal breaks.  Pinkerton's security personnel were required to spend the majority of the duration of their meal breaks at the guard shack, armed, and on-call in case of emergencies.

B.

On March 29, 2010, Appellees, on behalf of themselves and similarly situated Pinkerton employees, filed suit against Pinkerton in the United States District Court for the District of Maryland.  Appellees alleged Pinkerton's compensation practices related to disarming and meal breaks violated federal and state law under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Maryland Wage and Hour Law and the Maryland Wage Payment and Collection Law, Md. Code Ann, Lab. & Empl., Title 3.[4]

---

[3] Citations to the "S.A." refer to the Supplemental Appendix filed by the parties in this appeal.  Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[4] Appellee Jackson also brought a state law claim for unlawful retaliation, Md. Code Ann., Lab. & Empl., § 3-428, but such claim is not at issue in this appeal.

On March 30, 2010, Appellees moved to conditionally certify their federal claims as an FLSA opt-in collective action under 29 U.S.C. § 216(b). On August 11, 2010, the district court certified Appellees' FLSA claims as a collective action.

On October 8, 2010, Pinkerton moved for partial summary judgment on Appellees' state law claims, arguing they were barred under the federal enclave doctrine. The district court denied Pinkerton's motion, and also denied Pinkerton's subsequent request to certify the issue for interlocutory appeal. Pinkerton did not petition this court directly for interlocutory review of the federal enclave doctrine issue.

On May 30, 2011, Appellees moved for class certification of their state law claims pursuant to Federal Rule of Civil Procedure 23. On December 21, 2011, after hearing argument from the parties, the district court ruled from the bench and granted Appellees' request for class certification.

The district court began its analysis by recognizing, generally, that there were facts common to the entire class, that is, that all class members were uncompensated for their meal breaks and that any obligations that allegedly accompanied their meal breaks were applicable to all class members.[5]  The

---

[5] "The specific claim here is that the common fact with regard to this class is to start with . . . regard to meals. There is no question that Pinkerton does not compensate these (Continued)

district court then determined that the class was sufficiently numerous as it contained approximately 150 members.[6] Next, similar to its commonality analysis, the district court determined the Appellees adequately protected the interests of the class as a whole because the meal break claim was shared among the Appellees and all class members.[7]

The district court then recognized that even if some dissimilarities existed among the class -- because some individuals had, in fact, been compensated for their disarming time -- that "[did not] change the outcome about the propriety of a class action going forward[,]" J.A. 990, because those class members who did not suffer the disarming injury could be excluded from any potential recovery for the disarming component. The district court concluded by reiterating its

employees for 45 minutes of time that is allotted for their meals." J.A. 987.

[6] "[G]iven the number of potential plaintiffs in the class, 150 more or less, 152, that would be a numerous class whose joinder would be impractical." J.A. 988.

[7] "[T]he only other issue as far as the case is concerned under Rule 23 is whether the representative parties will fairly and adequately protect the interest of the class proposed. These three proposed members all suggest that they were . . . denied compensation during their lunch time, even though they were required to bear weapons, have a radio, be in the curtilage and so on and so forth. And that in the Court's view, at least at this stage, is strong evidence, if you will that there was a common fact that could be finally established on the merits of the case." J.A. 988–89.

8

determination that the Appellees could adequately protect the interests of the class and by determining Appellees' counsel could adequately represent the class as a whole.[8]

The district court memorialized its oral opinion in a brief, conclusory three-page written order dated January 11, 2012. The district court's order, which did not provide any further analysis, defined the class as "[a]ll current and/or former employees of Pinkerton Government Services who worked at Andrews Air Force Base and held non-exempt positions as civilian security guards since December 2007." J.A. 1010.

On January 27, 2012, pursuant to Federal Rule of Civil Procedure 23(f), Pinkerton petitioned this court for interlocutory review of the district court's grant of class certification of Appellees' state law claims.[9] On appeal, Pinkerton also requested that this court exercise its pendent appellate jurisdiction to review the district court's earlier decision to deny Pinkerton's motion for partial summary judgment

---

[8] "The question about whether the representative parties will fairly and accurately protect the interest of the class, the plaintiffs have all been security guards and there's no question as to their at least truthfulness, as to their own situation when they were with Pinkerton at Andrews Air Force Base." J.A. 991.

[9] Pinkerton did not seek review of the district court's decision to certify Appellees' federal FLSA claims as an opt-in collective action.

on Appellees' state law claims based on the federal enclave doctrine. On February 29, 2012, we granted Pinkerton's petition for interlocutory review.

## II.

We review a district court's Rule 23 class certification decision for an abuse of discretion. Brown v. Nucor Corp., 576 F.3d 149, 152 (4th Cir. 2009).

We exercise pendent appellate jurisdiction at our own discretion, in "limited and narrow" circumstances. Rux v. Republic of Sudan, 461 F.3d 461, 475 (4th Cir. 2006).

## III.

### A.

#### Class Certification

We begin by addressing the central subject of this appeal: the district court's grant of Appellees' motion for class certification.

Rule 23 of the Federal Rules of Civil Procedure governs the procedures related to class actions. Rule 23 contains two provisions that the party seeking class certification must satisfy in order for a class action to be maintained: Rule 23(a); and Rule 23(b).

Under Rule 23(a), an individual or group of individuals may operate as a representative of a class only if:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition, the class representative must satisfy one of the class action requirements found in Rule 23(b). In this case, the district court concluded Appellees had satisfied Rule 23(b)(3), which, in relevant part, permits a class action if

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).[10]

---

[10] A class action may also be maintained under Rule 23(b) if either:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the (Continued)

11

On appeal, Pinkerton argues Appellees failed to satisfy the threshold Rule 23(a)(2) and (3) commonality and typicality requirements, respectively, for their disarming and meal break claims and failed to show, pursuant to Rule 23(b)(3), common questions of law or fact predominate over questions affecting individual members.

1.

Commonality

Under the Rule 23(a) commonality criterion, class representatives must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Although "for purposes of Rule 23(a)(2) even a single common question will do," Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011) (internal quotations and alterations omitted), not just any common question will do. For example, asking whether all potential class members work for the same company, are eligible for the same remedies, or even suffered a violation of the same

interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; [or]

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; . . . .

Fed. R. Civ. P. 23(b).

12

provision of law is insufficient.  Wal-Mart, 131 S. Ct. at 2551. Rather, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury[,]" id. (internal quotation marks and citation omitted) -- a shared injury that also springs forth from the same "common contention." Id. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. The Seventh Circuit's decision in Ross v. RBS Citizens, N.A., 667 F.3d 900 (7th Cir. 2012), is illustrative. In Ross, the Seventh Circuit concluded, "the glue holding together the Hourly and ABM classes is based on the common question of whether an unlawful overtime policy prevented employees from collecting lawfully earned overtime compensation." 667 F.3d at 910.

2.

Typicality

Typicality under Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class . . . ." Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). Although a representative's claims and the claims of other members of the class need not be "perfectly identical or perfectly aligned," id. at 467, the

13

representative's pursuit of his own interests "must simultaneously tend to advance the interests of the absent class members." Id. at 466.

In order to conduct a typicality analysis a court must compare "the plaintiffs' claims or defenses with those of the absent class members." Id. at 467. That analysis will necessarily entail "[1] a review of the elements of plaintiffs' prima facie case[;] . . . [2] the facts on which the plaintiff[s] would necessarily rely to prove [those elements,]" id.; and (3) a determination of to what extent "those facts would also prove the claims of the absent class members." Id.; accord Soutter v. Equifax Info. Servs., LLC, No. 11-1564, 2012 WL 5992207 (4th Cir. Dec. 3, 2012).

### 3.

### Predominance

Under Rule 23(b)(3), whether common questions predominate over individual questions is a separate inquiry, distinct from the requirements found in Rule 23(a). See Wal-Mart, 131 S. Ct. at 2556. This balancing test of common and individual issues is qualitative, not quantitative. Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 429 (4th Cir. 2003) (citing In re Am. Med. Sys., Inc., 75 F.3d 1069, 1080 (6th Cir. 1996)). Indeed, common issues of liability may still predominate even when some individualized inquiry is required.

14

See id. For example, in Stillmock v. Weis Markets, Inc., 385 F. App'x 267 (4th Cir. 2010), we considered whether individual statutory damages under the Fair and Accurate Credit Transaction Act rendered the plaintiffs' action so individualized as to preclude class-wide treatment. In answering that question in the negative, we recognized that where "the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3)." 385 F. App'x at 273.

We have noted, "[i]n a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 n.4 (4th Cir. 2001) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 609 (1997)). Nonetheless, the Rule 23(a) commonality requirement, and the Rule 23(b)(3) predominance requirement remain separate inquiries and the inquiries should not be "blended." Wal-Mart, 131 S. Ct. at 2556 (alterations omitted). However, a court may use some of the same tools to construct the two separate inquiries. A court

15

may analyze the dissimilarities between class members to determine whether "even a single common question," id. (internal quotations and alterations omitted), exists for Rule 23(a) purposes and then to determine whether common questions predominate for Rule 23(b)(3) purposes. See id.

4.

Rigorous Analysis

In Wal-Mart, the Supreme Court emphasized that the Rule 23 prerequisites are not to be taken lightly and "do[] not set forth a mere pleading standard." 131 S. Ct. at 2551. Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id. As a result, the trial court may find it necessary to "probe behind the pleadings" and ultimately, will need to conduct a "rigorous analysis" to determine whether the Rule 23 prerequisites have been satisfied. Id. (internal citations and quotation marks omitted); see also Amgen Inc. v. Conn. Ret. Plans and Trust Funds, 568 U.S. ___, No. 11-1085, slip op. at 9 (2013) (cautioning that in a rigorous class certification analysis, "[m]erits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are

16

satisfied"). In the end, "[a]ctions such as this one, . . . may be brought only if the numerosity, commonality, typicality, representativeness, predominance, and superiority requirements of both Rule 23(a) and (b)(3) are met." Lienhart, 255 F.3d at 146.

In this case, after reviewing the district court's oral ruling and brief written order, we find the district court abused its discretion by failing to provide a "rigorous analysis" sufficient to enable us to conduct meaningful appellate review.

We first turn to commonality. The district court did note that there appeared to be a common question of fact among all the class members: whether or not they were compensated for their meal breaks. It is undisputed that they were not. Given the factual circumstances of their meal breaks, a common question of law could be whether or not the class members should have been compensated for that time under Maryland law. But whether those common questions are dependent upon a "common contention," Wal-Mart, 131 S. Ct. at 2551, the resolution of which will resolve "each one of the claims in one stroke[,]" id., is a determination for the district court to make in the first instance. See M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832 (5th Cir. 2012) (remanding class certification issue to allow the district court to conduct rigorous analysis).

The same can be said of the typicality requirement. The district court's oral ruling and brief written order did not clearly address the typicality requirement in any meaningful way that this court can identify. The district court did not compare the claims of the Appellees with the class as a whole to determine whether Appellees' claims are typical of the class. See e.g., Deiter, 436 F.3d at 466–67.

Finally, the district court did not conduct the required separate inquiry as to whether common questions of law or fact predominate over those affecting only individual class members. Rather, the district court's limited oral ruling appeared to blend the commonality and predominance inquiries -- which Wal-Mart counsels against. The district court did appear to acknowledge that there may be some dissimilarities between class members and that these dissimilarities did not "change the outcome about the propriety of a class action . . . ." J.A. 990. But whether this was in part, or in its entirety, the district court's predominance analysis is unclear, and in either case, insufficiently rigorous. The district court also did not address whether, in fact, the class action is the superior method for resolving this controversy compared to other alternatives. See, e.g., Stillmock, 385 F. App'x at 273–75.

Appellees suggest that to compensate for any deficiency in the pleading relied on by the district court, we

18

could probe behind the pleadings and look to the declarations. However, we note that during the district court hearing on Appellees' motion for class certification, Appellees undercut their own argument in this regard. Appellees stated:

> You have the underlying declarations. That is what you should read . . . . And when you read any one of those 31 declarations, it's not at all clear that the description that, ["]I never worked beyond the, I never worked beyond my scheduled shift time["] refers to anything but the time, but the present time period. That is the time period after November of 2009.
>
> In fact, many of the declarants specifically refer to the post-2009 procedure of signing in and signing out at the beginning and end of their shift. You know, at -- when it's clear that before November of 2009, you were supposed to sign out at five o'clock and not at 5:15, for instance, and that's the 15 minutes we're talking about.
>
> So, you know, when the declarants are asked to say whether sometimes, rarely, always, never, some of the time they ever worked more than their scheduled work time, the context of the declaration is clear that they're acting within the framework of the, of the wage recording policies that have been in place since November of '09.

J.A. 975. Thus, the class member declarations, by the Appellees own admission, speak only to the commonality of time worked _after_ November 2009, a time period, which with respect to the disarming claim, is not even at issue in this case.

General Telephone Company of the Southwest v. Falcon, 457 U.S. 147 (1982), which involved allegations of employment discrimination, is also instructive here. As the Supreme Court

reaffirmed in Wal-Mart, in Falcon, commonality and typicality were lacking where,

> [c]onceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion [or higher pay] on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claim will share common questions of law or fact and that the individual's claim will be typical of the class claims.

131 S. Ct. at 2553 (quoting Falcon, 457 U.S. at 157-58) (internal quotation marks omitted). Here, there is a more narrow gap between (a) Appellees' claim that they have been denied pay based on Pinkerton's employee-wide, under-inclusive definition of time-worked, and (b) the existence of a class of fellow employees who suffered that same injury. But whether that gap has, in fact, been successfully bridged, is for the district court to determine in the first instance.

In sum, a rigorous analysis into the Rule 23(a) and Rule 23(b)(3) requirements will clearly contain the following elements. First, a district court must decide whether "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

Second, a district court must determine whether even a single question of fact or law is common to the class. Such questions will depend on a "common contention," the resolution

20

of which will resolve "an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 131 S. Ct. at 2551; see also Ross, 667 F.3d at 908–10 (7th Cir. 2012).

Third, a district court must determine whether the claims (or defenses) of the representative parties are typical of those of the class as a whole by comparing the claims of the representatives with the claims of the absent class members and determining whether they tend to advance the same interests. See Deiter, 436 F.3d at 466–67.

Fourth, a district court must determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Finally, if seeking class certification pursuant to Rule 23(b)(3), a district court must determine whether common questions of law or fact predominate over individual questions such that a class action is the superior method for resolving the controversy. This separate inquiry will require a district court to balance common questions among class members with any dissimilarities between class members. See Gunnells, 348 F.3d at 427–30. If satisfied that common questions predominate, a district court should then also consider whether any alternative methods exist for resolving the controversy and whether the class action method is in fact superior. See, e.g., Stillmock, 385 F. App'x at 273–75.

21

We make no determination at this point as to which path the district court should take. Perhaps a class should be certified, perhaps one or more subclasses should be certified, or perhaps class certification should be denied entirely. We only conclude at this point, that what is required, is a more rigorous analysis into whether, in this case, the "numerosity, commonality, typicality, representativeness, predominance, and superiority requirements of both Rule 23(a) and (b)(3) are met." Lienhart, 255 F.3d at 146.

B.

Pendent Jurisdiction

We now turn to Pinkerton's argument in favor of our exercise of pendent appellate jurisdiction. Pinkerton asks this court to exercise pendent appellate jurisdiction over the district court's order denying partial summary judgment on Appellees' state law claims based on the federal enclave doctrine.[11]

---

[11] The federal enclave doctrine derives from Article I, Section 8, Clause 17 of the United States Constitution. The Constitution provides that Congress shall have the power "[t]o exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const. art. I, § 8, cl. 17. While the general principle of the federal enclave doctrine is that only Congress shall have exclusive legislative authority over federal enclaves, the Supreme Court and Circuit Courts have recognized that certain circumstances may permit
(Continued)

22

Our appellate jurisdiction is limited to final orders from the district courts with certain limited exceptions. Rux v. Republic of Sudan, 461 F.3d 461, 474 (4th Cir. 2006) (citing 28 U.S.C. § 1291 (2000)). Pendent appellate jurisdiction is "a judicially-created, discretionary exception" to the requirement that courts of appeals can only hear appeals from final orders. Id. at 475. As such, "[it] is an exception of limited and narrow application driven by considerations of need, rather than of efficiency." Id. (citing Montano v. City of Chicago, 375 F.3d 593, 599 (7th Cir. 2004)). Even if we find it permissible to exercise pendent appellate jurisdiction, its exercise remains discretionary. See Clem v. Corbeau, 284 F.3d 543, 549 n.2 (4th Cir. 2002) ("Assuming that we have pendent appellate jurisdiction of the order denying summary judgment on the state law claims, . . . the decision to exercise such jurisdiction is purely discretionary.") (citing DiMeglio v. Haines, 45 F.3d 790, 808 (4th Cir. 1995)).

We have recognized that the Supreme Court's decision in Swint v. Chambers County Commission, 514 U.S. 35 (1995), indicates pendent appellate jurisdiction is available in only

state law to apply. See, e.g., Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 180 (1988); James Stewart & Co. v. Sadrakula, 309 U.S. 94, 99–100 (1940); Allison v. Boeing Laser Technical Servs., 689 F.3d 1234, 1236–38 (10th Cir. 2012).

two scenarios: "(1) when an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of an immediately appealable issue." Rux, 461 F.3d at 475 (quoting Swint, 514 U.S. at 50-51.). Our commitment to this dichotomy has held firm. See, e.g., Evans v. Chalmers, 703 F.3d 636, 658 (4th Cir. 2012) (applying the Swint standard in the context of an immediately appealable issue of qualified immunity in a § 1983 action); Bellotte v. Edwards, 629 F.3d 415, 427 (4th Cir. 2011) (same).

But the two potential pendent jurisdiction scenarios set forth in Swint are not always so easily distinguished. See Myers v. Hertz Corp., 624 F.3d 537, 553 n.6 (2d Cir. 2010) ("In some cases, . . . the analysis of the two parts [of the Swint standard] will be substantially the same.") (citing Rein v. Socialist People's Libyan Arab Jamahiriya, 162 F.3d 748, 758 (2d Cir. 1998)).

Under the first pendent jurisdiction scenario, the Second Circuit in Myers explained that in order for two issues in two separate rulings to be inextricably intertwined, "the 'same specific question' will 'underl[ie] both the appealable order and the non-appealable order,' such that . . . resolution of the question will necessarily resolve the appeals from both

24

orders at once." 624 F.3d at 553 (quoting Stolt-Nielsen SA v. Celanese AG, 430 F.3d 567, 576 (2d Cir. 2005)). Likewise, we have held that a pendent issue is inextricably intertwined with an immediately appealable interlocutory issue, and we may thus grasp jurisdiction over the pendent issue, when resolution of the appealable issue "necessarily decides" the pendent issue. Rux, 461 F.3d at 476. For example, in Altman v. City of High Point, 330 F.3d 194 (4th Cir. 2003), we found that resolution of an interlocutory issue (whether officers were entitled to qualified immunity in a § 1983 action) "fully resolve[d]" the pendent issue (whether the municipality could be held liable) because the qualified immunity inquiry revealed the officers committed no federal constitutional violation which would have been required to hold the municipality liable. 330 F.3d at 207 n.10 (considering the issues "inextricably intertwined"); cf. Evans, 703 F.3d at 654 n.11, 658–59 (exercising pendent appellate jurisdiction over municipality's § 1983 liability when issues of qualified immunity fully resolved the issue, but finding neither Swint rationale supported exercising pendent appellate jurisdiction over state constitutional claims where "our review of . . . immunity . . . did not require any evaluation of the state constitutional claims").

Under the second pendent jurisdiction scenario, review of a pendent issue will be "necessary to ensure meaningful

25

review" of an immediately appealable issue if resolution of the pendent issue is necessary, or essential, in resolving the immediately appealable issue. Swint, 514 U.S. at 51; see also United States v. North Carolina, 180 F.3d 574, 581 n.4 (4th Cir. 1999) (citing Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996)).

In other words, under Swint "[i]t is appropriate to exercise pendent appellate jurisdiction only where [1] resolution of the appealable issue necessarily resolves the nonappealable issue, or [2] where review of the nonappealable issue is necessary to ensure meaningful review of the appealable one." Berrey v. Asarco, Inc., 439 F.3d 636, 647 (10th Cir. 2006) (citing Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir. 2006)).

Pinkerton contends the issues implicated by the federal enclave doctrine in this case satisfy both Swint prongs, that is, that they are so inextricably intertwined with, and necessary to ensure meaningful review of, the class certification of the Maryland state law claims, that they warrant our review at this stage. Pinkerton argues that in order to effectively review the district court's grant of class certification, we must first review whether state law is even applicable in this case, or whether it is prohibited by the federal enclave doctrine. Pinkerton's argument is unavailing.

26

Pinkerton does not and cannot illustrate how the two issues are so inextricably intertwined that resolution of the appealable class certification issue necessarily resolves the non-appealable federal enclave doctrine issue. This is because, in fact, the two issues are distinct legal concepts. Whether Appellees have satisfied the Rule 23(a) prerequisites for class certification has no bearing on whether Appellees' state law claims are ultimately barred under the federal enclave doctrine. Nor can Pinkerton illustrate how review of the federal enclave doctrine issue is necessary in order to ensure our meaningful review of the class certification issue. Although analysis of the former could ultimately foreclose the need for analysis of the latter, resolution of the federal enclave doctrine issue is not necessary to review the class certification issue.[12]

The concern raised by Pinkerton speaks to judicial economy, which should not serve as the basis for exercising pendent appellate jurisdiction. See Rux, 461 F.3d at 475 ("We are constrained by the language of the Supreme Court as well as

---

[12] Indeed, we have previously refused to invoke pendent appellate jurisdiction even though a determination of the pendent issue had the possibility to foreclose the underlying suit. See Ochoa Lizarbe v. Rivera Rondon, 402 F. App'x 834, 837–38 (4th Cir. 2010) (concluding that although resolution of the pendent issues in the defendant's favor could have disposed of the plaintiffs' suit, they did not warrant our consideration because "[t]he doctrine of pendent appellate jurisdiction is not focused on efficiency . . . .").

27

our own precedent from recognizing efficiency considerations as a basis for the exercise of pendent appellate jurisdiction.").

Other circuits have likewise refused to exercise pendent appellate jurisdiction over a non-appealable issue in the context of a class certification appeal. See, e.g., Myers, 624 F.3d 537 (affirming district court's class certification determination but refusing to exercise pendent appellate jurisdiction over district court's earlier denial of plaintiff's motion to send opt-in notice to potential class members); Poulos v. Caesars World, Inc., 379 F.3d 654 (9th Cir. 2004) (affirming district court's class certification determination but refusing to exercise pendent appellate jurisdiction over district court's denial of defendant's motion to dismiss the underlying action on primary jurisdiction, Burford abstention, and personal jurisdiction grounds).

Accordingly, we decline to exercise pendent appellate jurisdiction over the district court's denial of Pinkerton's motion for partial summary judgment on federal enclave doctrine grounds.

IV.

We conclude that, consistent with Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), a more rigorous analysis into the Rule 23 requirements is necessary in this case to ensure meaningful appellate review. Specifically, there must be

28

a more rigorous analysis into whether there are common questions of law or fact, whether Appellees' claims are typical of the class as a whole, and whether common questions of law or fact predominate over any questions affecting only individual members.

We also decline to exercise pendent appellate jurisdiction over Pinkerton's motion for partial summary judgment to consider whether Appellees' state law claims are barred under the federal enclave doctrine. We exercise pendent appellate jurisdiction sparingly, at our own discretion, as "[it] is an exception of limited and narrow application driven by considerations of need, rather than of efficiency." Rux v. Republic of Sudan, 461 F.3d 461, 475 (4th Cir. 2006). Pinkerton has not shown that the federal enclave doctrine is either inextricably intertwined with, or necessary to ensure meaningful appellate review of, the Rule 23 issues of class certification sufficient to invoke pendent appellate jurisdiction. Pinkerton's federal enclave doctrine argument, if necessary, should be considered in the wake of a final order.

We therefore vacate and remand the district court's class certification order for the required rigorous analysis and deny Pinkerton's request to review the district court's denial of its motion for partial summary judgment.

VACATED AND REMANDED